UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| VF ELECTRIC, INC., and LEWIS BARBE, a single man, | ) ) ) | |
| Plaintiffs, | ) ) | 2:09-cv-01007 JWS |
| vs. | ) ) | ORDER AND OPINION |
| GTE CORPORATION; CHALLENGER CORPORATION; and TINICUM HOLDINGS, | ) ) ) ) ) | [Re: Motion at Dockets 77, 90, and 95] |
| Defendants. | ) ) | |

## I.  MOTIONS PRESENTED

At docket 77, defendant GTE Corporation ("GTE") moves to dismiss plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  At docket 79, Eaton Corporation ("Eaton"), who acquired Challenger Electrical Equipment Corporation in 1994, joins the motion to dismiss.  At docket 86, plaintiffs oppose the motion.  Defendant GTE replies at docket 87.  Eaton joined the reply at docket 88.  Oral argument was requested, but it would not assist the court.

At docket 90, plaintiffs move for leave to file a third amended complaint, reflecting "current legal identities and assumed liabilities of defendant corporations."  At docket

91, GTE opposes the motion. Eaton joins the opposition at docket 92. Plaintiffs reply at docket 93. At docket 95, plaintiffs VF Electric, Inc. ("VF Electric") and Lewis Barbe filed a "motion to supplement evidence." At docket 96, GTE opposes the motion. Plaintiffs reply at docket 98. Oral argument was not requested, and it would not assist the court.

## II.  BACKGROUND[1]

This action arises from monetary losses resulting from the failure of a QSF switchbox. QSF switchboxes, which are capable of producing 200, 400, 600, 800, and 1200 amps of electricity, are "used exclusively for commercial purposes such a providing electricity to power the air conditioner at an apartment complex."[2]

GTE manufactured and sold QSF switchboxes from November 1977 to March 1983. In 1983, GTE sold the business that manufactured and sold QSF switchboxes to Challenger Corporation ("Challenger")[3] and Tinicum Holdings ("Tinicum"). "[U]nder the terms of the Sales Agreement [] GTE continued to be liable in whole or in part, for claims and lawsuits arising from its manufacture and distribution of the QSF switchbox, and ongoing replacement programs."[4] Challenger and Tinicum manufactured and sold QSF boxes from November 1983 through 1987.

---

[1] The facts in this section, which are from plaintiffs' second amended complaint, are taken as true and construed in the light most favorable to plaintiffs pursuant to Rule 12(b)(6).

[2] Doc. 64 at p. 5.

[3] Plaintiffs contend that Challenger Corporation's legal name is Challenger Electrical Equipment Corporation. (Doc. 90 at p. 1).

[4] Doc. 64 at p. 6.

The QSF switchbox "is supposed to allow the free flow of electricity."[5] Resistance in the flow of electricity generates heat, which degenerates the integrity and alignment of parts critical for the operation of the QSF switchbox. The exterior handle of the QSF switchbox turns the flow of electricity on and off. "In a number of cases the mere movement of the handle precipitated an explosion."[6] By the late 1970s, GTE "knew that the QSF switchbox had serious, dangerous flaws."[7] Challenger and Tinicum were also aware of the QSF switchbox defects, but continued to manufacture and sell them nationwide.

In the early 1980s, GTE instituted informal replacement programs for QSF switchboxes. Challenger and Tinicum continued these replacement programs. GTE, Challenger, and Tinicum also initiated limited inspection programs in California, Texas, and possibly Arizona. GTE, Challenger, and Tinicum "neither disclosed the true danger these switchboxes posed nor did they make any effort to adequately warn purchasers or those persons operating, maintaining and repairing the switchboxes of danger."[8] In March 1985, "defendants" sent a notice to some purchasers of the QSF switchbox, stating that the switchbox might overheat and a free replacement was available.

Lewis Barbe is an individual who purchased four functioning QSF switchboxes sometime in 2008. VF Electric, Inc. is a small electrical contracting business which installs and maintains electrical equipment for commercial customers. On October 13,

---

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8]*Id.* at p. 7.

2008, VF Electric was retained by the Maricopa County Community College District "to examine the electrical distribution system supplying electricity to its warehouse" in Phoenix, Arizona.  While inspecting the electrical distribution system, Richard Venezia, a master electrician and VF Electric's employee, opened the QSF switchbox.  The switchbox exploded, causing Mr. Venezia disfiguring burn injuries.  VF Electric "suffered the financial loss of a key employee to its business for almost six months."[9]  "[I]n settlement with the landowner, VF Electric obtained ownership and all rights of ownership to four QSF switchboxes."[10]

On May 11, 2010, plaintiffs VF Electric and Lewis Barbe filed a second amended complaint against defendants GTE, Challenger, and Tinicum.  Plaintiffs' second amended complaint alleges claims of strict liability, breach of warranty, consumer fraud, negligence, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all defendants.

Plaintiffs now request leave to file a third amended complaint "reflect[ing] the current identifies of the entities who manufactured and/or sold the subject defendant model switchbox."[11]  Plaintiffs also move to supplement the evidence in support of their pleadings.[12]  Defendants GTE and Eaton, as successor in interest to Challenger

---

[9]*Id.* at p. 10.

[10]*Id.* at p. 2.

[11]Doc. 90 at p. 1.

[12]Doc. 95.

Electrical Equipment Corporation, move to dismiss plaintiffs' second amended complaint for failure to state a claim upon which relief may be granted.[13]

### III.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.[14] In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[15] "Conclusory allegations of law, however, are insufficient to defeat a motion to dismiss."[16] To avoid dismissal under Rule 12(b)(6), plaintiffs must aver in their complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[19]

---

[13] Doc. 77.

[14] *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

[15] *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).

[16] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[17] *Al-Kidd v. Ashcroft,* 580 F.3d 949, 956 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citation omitted)).

[18] *Iqbal*, 129 S.Ct. at 1949.

[19] *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

## IV.  DISCUSSION

Although not raised by defendants, the court has "an independent obligation to address subject matter jurisdiction before turning to the merits of the case."[20]  Subject matter jurisdiction may be based on federal question jurisdiction or diversity jurisdiction.[21]  Plaintiffs' second amended complaint alleges that the court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  "Jurisdiction founded on 28 U.S.C. § 1332 requires that the parties be in complete diversity and the amount in controversy exceed $75,000."[22]  Complete diversity between the parties requires that "each defendant must be a citizen of a different state from each plaintiff."[23]

Under 28 U.S.C. § 1332(c)(1), a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  Plaintiffs' second amended complaint alleges that VF Electric is incorporated and does business in Arizona, and that defendant GTE is a foreign corporation that "was authorized and doing business in Arizona."[24]  The second amended complaint does not allege where defendants GTE, Challenger, and Tinicum were incorporated and have their principal places of business.  Although not alleged in the second amended complaint, plaintiffs' opposition brief states that plaintiff Barbe is a

---

[20] *Munoz v. Mabus*, 630 F.3d 856, 859 (9th Cir. 2010).

[21] 28 U.S.C. §§ 1331, 1332.

[22] *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

[23] *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1234 (9th Cir. 2008).

[24] Doc. 64 at p. 4.

resident of Minnesota. Based on the facts alleged in the second amended complaint, the court cannot discern whether there is complete diversity between the parties.

Moreover, it does not appear that plaintiffs' claims are for more than the jurisdictional amount. Where plaintiffs originally file in federal court, "the amount in controversy is determined from the face of the pleadings."[25] Plaintiffs' second amended complaint alleges that VF Electric, a non-owner of a QSF switchbox, suffered the financial loss of a key employee for almost six months. As to plaintiff Barbe, the amended complaint alleges only that Barbe purchased four functioning QSF switchboxes and requests the costs of replacing the switchboxes. Based on these allegations, it is not clear that the amount in controversy reaches $75,000.

If diversity jurisdiction does not exist, plaintiffs "must establish that at least one claim alleged in the complaint 'arises under' federal law."[26] Plaintiffs' second amended complaint sets forth four state law claims and one federal RICO claim. Because only the RICO claim would support original federal subject matter jurisdiction, the court must determine whether plaintiffs state a claim under RICO upon which relief may be granted.

"To state a civil claim for a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[27] A "'pattern of racketeering activity' requires at least two acts of racketeering

---

[25] *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel.*, 599 F.3d 1102, 1106 (9th Cir. 2010).

[26] *Ultramar America Ltd. v. Dwelle*, 900 F.2d 1412, 1413 (9th Cir. 1990) (citing 28 U.S.C. §§ 1441(b), 1331).

[27] *Rezner v. Bayerische Hypo-Und Vereinsbank*, 630 F.3d 866, 873 (9th Cir. 2010).

activity."[28] "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act indictable under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime."[29] "To allege a violation of mail fraud under § 1341, 'it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails ... in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud."[30] Federal Rule of Civil Procedure 9(b) requires that, in alleging fraud, "a party must state with particularity the circumstances constituting fraud." Consequently, to avoid dismissal under Rule 9(b), the complaint needs "to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."[31]

In support of their RICO claim, plaintiffs' second amended complaint alleges,

> That beginning in 1983, Defendants jointly agreed and conspired through their mutual employees, agents, representatives and others to withhold the known dangerous defect in the QSF switchbox. This includes, but is not limited to, the limited and deceptive letter these Defendants mailed to certain purchasers. (Use of mail)[32]

The amended complaint fails to allege any facts showing that defendants GTE, Challenger, and Tinicum formed a scheme or artifice to defraud. In addition, the

---

[28] 18 U.S.C. § 1961(5).

[29] *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 620 (9th Cir. 2004) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986)).

[30] *Miller*, 358 F.3d at 620 (quoting Schreiber, 806 F.2d at 1400).

[31] *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (internal quotation and citation omitted).

[32] Doc. 64 at p. 15.

amended complaint fails to 1) allege the specific content of the false representations contained in the March 1985 letter defendants sent to "certain purchasers of the QSF switchbox," and 2) state the identities of the parties to any alleged misrepresentation. Moreover, the amended complaint alleges only one act of mail fraud, which does not constitute a "pattern" under § 1961(5).  Because plaintiffs have failed to state a claim under RICO upon which relief may be granted, the RICO claim will be dismissed with prejudice.  Plaintiffs may not include a RICO claim in the amended complaint discussed below.  They have already had ample opportunity to amend the claims in their complaint.

Dismissal of plaintiffs' federal claim requires dismissal of plaintiffs' state law claims, unless the court has diversity jurisdiction.[33]  The concern about diversity jurisdiction is not an issue raised by the parties, so the court will afford plaintiffs a chance to amend their complaint **with respect to this issue** if they can do so consistently with Rule 11.  Plaintiffs may file a third amended complaint that pleads sufficient facts to establish the complete diversity of parties and that the amount in controversy exceeds $75,000.

In addition, the court notes that in response to defendants' arguments that plaintiffs' breach of warranty claims and Arizona Consumer Fraud Act claims are barred by the applicable statutes of limitations, plaintiffs contend that the statutes of limitations were tolled by defendants' acts of unlawful concealment and fraud.  However, plaintiffs' second amended complaint fails to allege any facts showing purposeful concealment

---

[33] *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1025 (9th Cir. 2007).

rising to the level of fraud. Consequently, plaintiffs will be allowed to plead specific facts showing purposeful concealment and fraud in the third amended complaint contemplated by this order, provided they can do so consistent with Rule 11.

Plaintiffs' pending motion for leave to file a third amended complaint seeks to "delete [d]efendant Tinicum Holdings, Inc. to be substituted by its current name, C.E.E.C. Holdings Inc." and to dismiss defendent Challenger Corporation and add Eaton Corporation as a defendant. However, plaintiffs' proposed third amended complaint includes numerous other changes that go well beyond the limited scope of amendment permitted by the court in its order at docket 84 modifying the earlier order at docket 61. Consequently, the court will deny plaintiffs' motion for leave to file a third amended complaint in all respects save dismissal of defendants Tinicum Holdings and Challenger Corporation and the addition of defendants C.E.E.C. Holdings, Inc. and Eaton Corporation. These changes shall be accomplished in a third amended complaint which also sets forth facts to support diversity jurisdiction and tolling the applicable statutes of limitations as discussed above.

To summarize, within 14 days from the date of this order plaintiffs may, if they can do so consistent with Rule 11, file a third amended complaint alleging sufficient facts to establish complete diversity of the parties and the required amount in controversy, as well as facts to support plaintiffs' contention that defendants' acts of concealment and fraud tolled the applicable statutes of limitations. If such a complaint is filed, it shall also make the changes in the identification of the defendants discussed above. In light of the procedural history of this action and the order at docket 61, the

court will not, under any circumstances, entertain any further motion for leave to amend by plaintiffs.

Plaintiffs' "motion to supplement evidence," asks the court to permit plaintiffs to "supplement their pleadings with recently discovered vital evidence."[34] Plaintiffs attached numerous documents to the motion. Plaintiffs do not cite, nor is the court aware of, any authority supporting such a motion. Plaintiffs' motion to supplement evidence is essentially a motion to amend their complaint yet again, to add facts contained in the attached documents. In light of the court's orders at dockets 61 and 84, and to avoid further prejudice to defendants, the court will deny plaintiffs' motion to supplement evidence.

## V.  CONCLUSION

For the reasons set out above, it is hereby **ORDERED**:

- Defendant's motion to dismiss at docket 77 is **GRANTED** such that plaintiffs' RICO claim is **dismissed with prejudice**, and **DENIED** to the extent it requires the court to exercise jurisdiction over plaintiffs' state law claims as to which the court is not convinced it has subject matter jurisdiction.

- Plaintiffs' motion at docket 90 for leave to file a third amended complaint is **DENIED**.

- Plaintiff's motion at docket 95 to "supplement evidence" is **DENIED**.

---

[34]Doc. 95 at p. 1.

- Plaintiffs shall have 14 days from the date of this order to file a third amended complaint setting forth their state law claims in a manner **consistent with this order**. If no such complaint is timely filed, this case shall be closed.
- The court shall not entertain any further motion for leave to amend plaintiffs' complaint.

DATED this 3rd day of March 2011.

                                                      /s/ JOHN W. SEDWICK
                                        UNITED STATES DISTRICT JUDGE